## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARVIN BANKS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-01341** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **REV. ULLI KLEMM, <u>et al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the Court are the parties' motions for summary judgment. (Doc. Nos. 81, 89.)  For the reasons set forth below, the Court will grant Defendants' motion for summary judgment and will deny, as moot, Plaintiff's motion for summary judgment.[1]

## I.    INTRODUCTION

Plaintiff Marvin Banks ("Plaintiff"), who is proceeding <u>pro se</u> and <u>in forma pauperis</u>, is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC").  He is currently incarcerated at State Correctional Institution Benner ("SCI Benner") in Bellefonte, Pennsylvania, and he has been incarcerated there since April 3, 2018.  (Doc. No. 90-8.)

On August 3, 2020, he commenced the above-captioned action by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 and the Religious Land

---

[1] Also presently before the Court are various motions that have been filed the parties. (Doc. Nos. 84, 93, 100, 103.)  Those motions will be addressed herein.

Use and Institutionalized Persons Act ("RLUIPA") against Defendant Reverend Ulli Klemm ("Klemm") and Regional Deputy Secretary Michael Wenerowicz ("Wenerowicz"). (Doc. No. 1.) Plaintiff claimed that these defendants violated his rights under the First Amendment and RLUIPA by denying his requests for a sacred bundle, without which Plaintiff averred that he, as a Native American, was unable to pray. (Id.) Plaintiff is now proceeding on an amended complaint, which he filed on May 10, 2021, against Klemm and Wenerowicz, as well as the following individuals: Chaplain Matthew McCoy ("McCoy"); Program Manager Rossman ("Rossman"); Deputy Booher ("Booher"); and former Superintendent Robert Marsh ("Marsh") (collectively, "Defendants"). (Doc. No. 43.) In his amended complaint, Plaintiff again claims that his rights under the First Amendment and RLUIPA were violated when Defendants denied his requests for a sacred bundle. (Id.)

Defendants Wenerowicz and Klemm filed their answer and affirmative defenses to the amended complaint on June 8, 2021 (Doc. No. 51), and Defendants Rossman, Booher, Marsh, and McCoy filed their answer and affirmative defenses to the amended complaint on July 9, 2021 (Doc. No. 54). Defendants asserted, inter alia, the following affirmative defenses: Plaintiff's failure to exhaust available administrative remedies; Plaintiff's failure to state a claim upon which relief can be granted; the unavailability of monetary damages; issue preclusion; and sovereign immunity. (Doc. Nos. 51, 54.)

2

The parties then engaged in discovery (Doc. No. 55), which closed on January 10, 2022 (Doc. No. 62).  Following the close of discovery, the parties each filed dispositive motions.  On May 23, 2022, Plaintiff filed his motion for summary judgment and brief in support.  (Doc. Nos. 81, 82.)  Defendants responded to those filings with a motion to strike and a brief in support, arguing that Plaintiff failed to include a statement of material facts, as required by Local Rule 56.1.  (Doc. Nos. 84, 85.)  Plaintiff, however, has not responded to Defendants' motion to strike or since filed a statement of material facts in support of his motion for summary judgment.

Then, on July 27, 2022, following an extension of time, Defendants filed their motion for summary judgment and statement of material facts.  (Doc. Nos. 89, 90.)  They also filed a motion for an extension of time to file a brief in support of their motion for summary judgment.  (Doc. No. 91.)  The Court granted that motion and set a deadline by which Defendants were to file their brief in support.  (Doc. No. 94.)  However, once that deadline passed, and Defendants had not filed their brief in support, Plaintiff submitted a letter to the Court providing "notice of [his] intent" to move for default judgment.  (Doc. No. 96.)  Although unclear, Plaintiff's letter suggested that he intended to move for default judgment because Defendants had not, allegedly, filed a "response" to his motion for summary judgment.  (Id. (stating that he had "not received an answer or any cross summary [sic] from [D]efendants").)

3

After receiving Plaintiff's letter, the Court directed Defendants to file a response thereto. (Doc. No. 97.) Defendants subsequently filed a letter with the Court explaining that they had, in fact, filed a response to Plaintiff's motion for summary judgment—namely, their motion to strike and brief in support thereof. (Doc. No. 98.) They acknowledged, however, that they had not filed a brief in support of their own motion for summary judgment. (Id.) As a result, Defendants filed their brief in support that same day, and they asserted that they would be mailing a copy to Plaintiff at SCI Benner. (Doc. No. 99.)

Shortly thereafter, Plaintiff filed a motion for default judgment and brief in support. (Doc. Nos. 100, 101.) Plaintiff requests that the Court enter judgment in his favor because Defendants failed to timely "file a response to [his] summary judgment" motion. (Doc. No. 100 at 1; Doc. No. 101 at 1 (stating that his "summary judgment motion was not responded to by [D]efendants and should be granted in favor of Plaintiff").) Plaintiff also subsequently filed a motion for contempt, unaccompanied by a brief in support. (Doc. No. 103.) In his motion for contempt, Plaintiff again complains that Defendants did not, allegedly, respond to his motion for summary judgment.[2] (Id. at 1.)

---

[2] The Court surmises that Plaintiff may be attempting to challenge Defendants' failure to timely file a brief in support of their own motion for summary judgment. (Doc. No. 103.)

Thus, the parties' various motions are ripe for resolution.  For the reasons set forth below, the Court will grant Defendants' motion for summary judgment and will deny, as moot, Plaintiff's motion for summary judgment.  In addition, the Court will deny, as moot, Defendants' motion to strike Plaintiff's motion for summary judgment and Plaintiff's motion to appoint counsel.  Finally, the Court will deny Plaintiff's motions for default judgment and for contempt.

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).  "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law."  Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  And, a disputed material fact is "genuine . . . [i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]"  See Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991) (citing Anderson, 477 U.S. at 248).

A party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material

fact."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party's burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  See id. at 325.

Once the moving party has met its initial burden, the burden shifts to the nonmoving party, who may not rest upon the unsubstantiated allegations or denials of its pleadings and, instead, must go beyond its pleadings, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show a genuine dispute of material fact.  See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324.  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial[,]" summary judgment is proper.  See id. at 322. Summary judgment is also proper if the nonmoving party provides evidence that is "merely colorable" or that "is not significantly probative[.]"  See Gray, 957 F.2d at 1078.

In addition, when deciding a motion for summary judgment, "the court must view all evidence and draw all inferences in the light most favorable to the non-moving party[.]"  See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir.

2008) (citing <u>Davis v. Mountaire Farms, Inc.</u>, 453 F.3d 554, 556 (3d Cir. 2006));

<u>M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.</u>, 969 F.3d 120, 125 (3d Cir.

2020) (stating that, when reviewing a motion for summary judgment, courts are to

"view the evidence in the light most favorable to the non-moving party").

## III.   DISCUSSION

### A.   Defendants' Motion for Summary Judgment

Initially, Defendants argue that they are entitled to summary judgment

because Plaintiff failed to exhaust his administrative remedies as required by the

Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a).  (Doc. No. 99 at 6-12.)  The

Court agrees.  The PLRA provides that "'[n]o action shall be brought with respect

to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison,

or other correctional facility until such administrative remedies as are available are

exhausted.'"  <u>See</u> <u>Paladino v. Newsome</u>, 885 F.3d 203, 207 (3d Cir. 2018) (alteration

in original) (quoting 42 U.S.C. § 1997e(a)).

In other words, exhaustion of available administrative remedies is a

prerequisite for Plaintiff bringing this suit under § 1983.[3]  <u>See</u> <u>Ross v. Blake</u>, 578

U.S. 632, 638 (2016) (explaining that the PLRA's "language is 'mandatory': An

---

[3]  Notably, Plaintiff was in the custody of the DOC on the date that he commenced this litigation and on the date that he filed his operative pleading (<u>i.e.</u>, his amended complaint).  (Doc. Nos. 1, 43.)

inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies") (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006))); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)).

The "stringent requirements" of the PLRA are designed to, among other things, "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits," See Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (alterations added) (citation and internal quotation marks omitted); Jones, 549 U.S. at 204 (explaining that the exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court").

This exhaustion requirement is mandatory, see Booth v. Churner, 532 U.S. 731, 739 (2001), and it "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." See Porter v. Nussle, 534 U.S. 516, 532 (2002) (citation omitted). Additionally, this exhaustion requirement mandates

proper exhaustion, "meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'"  See Downey, 968 F.3d at 305 (quoting Woodford, 548 U.S. at 88).  And, the applicable "procedural rules are supplied by the individual prisons."  See id. (citations omitted); Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ." ).  A prisoner's failure to follow these procedural rules will result in a procedural default of the claims, thus barring the prisoner from bringing suit in federal court.  See id. at 227-32; Scott v. CO Smoke, No. 19-cv-01387, 2019 WL 7163465, at *2 (M.D. Pa. Dec. 20, 2019) (stating that prisoners "who fail to fully, or timely, complete the prison grievance process . . . are barred from subsequently litigating claims in federal court" (citing Spruill, 372 F.3d 218)).

As explained by the United States Court of Appeals for the Third Circuit, however, "administrative remedies must be available to the prisoner."  See Downey, 968 F.3d at 305 (citation omitted).  Administrative remedies are deemed unavailable when they operate as a "dead end[,]" are "so opaque" that they become, "practically speaking, incapable of use," or when prison employees "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  See id. (citing Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir.

2019)).  Thus, "[j]ust as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies."  See id. (citation omitted); Jones, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion" (alteration added).

Finally, the failure to exhaust available administrative remedies is an affirmative defense.  See Jones, 549 U.S. at 216.  Accordingly, "[t]he burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant."  See Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) (citation omitted).  However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."  See id.

Here, there are two (2) DOC policy statements and procedure manuals that are relevant to the Court's determination of whether Defendants have met their burden to demonstrate Plaintiff's failure to exhaust available administrative remedies as required by the PLRA before asserting his First Amendment and RLUIPA claims against Defendants. As set forth in Defendants' summary judgment filings, those policy statements and procedure manuals, are DC-ADM 804 and DC-

ADM 819.  The record reflects that Plaintiff pursued both of those administrative processes at SCI Benner.  The record further reflects that Plaintiff initially pursued DC-ADM 819, and then subsequently pursued DC-ADM 804. The Court will, therefore, address these administrative processes in that order.

But, before doing so, the Court notes that, in accordance with the Court's Local Rules, Defendants filed a statement of material facts in support of their motion for summary judgment.  (Doc. No. 90.)  Plaintiff, however, did not file his own statement of material facts, responding to the numbered paragraphs set forth in Defendants' statement.  Thus, under the Court's Local Rules, Defendants' facts are deemed admitted since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designated specific facts showing that there is a genuine issue for trial.' 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted) (emphasis added).

See Williams v. Gavins, No. 1:13-cv-0387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015), aff'd sub nom. Williams v. Gavin, 640 F. App'x 152 (3d Cir. 2016), (emphasis in original) (citation omitted).

11

Thus, for purposes of Defendants' motion for summary judgment, the material facts in this Memorandum are derived from Defendants' statement of material facts. That being said, the Court has conducted a thorough and impartial review of the record in this matter.  To the extent that there are any disputed issues of material fact that are unresolved by Defendants' motion for summary judgment, the Court will expressly note such disputes herein.   The Court now turns to its discussion concerning the relevant administrative processes in this case.

### 1.   DC-ADM 819

Under DC-ADM 819,[4] it is the express policy of the DOC "to accommodate inmates' religious beliefs consistent with the security needs and orderly administration of the facility by providing for the orderly management of religious opportunities for all inmates under the [DOC's] jurisdiction."  (Doc. No. 90-4 at 1.) Although it is the policy of the DOC to accommodate such religious beliefs, certain religious practices and activities are categorically prohibited, including, for instance: "language or behaviors that could reasonably be construed as a threat to safety, security or the orderly running of the facility[.]"  (Id. at 12; id. at 9 (explaining that, "[w]hen considered necessary for the security and good order of the facility[,]" religious activity may be restricted or limited).)

---

[4]  A copy of the DC-ADM 819 policy and procedure manual has been submitted by Defendants in support of their motion for summary judgment.  (Doc. No. 90-4.)

Under DC-ADM 819, any inmate, who is seeking a religious accommodation, must submit the appropriate request form to the Facility Chaplaincy Program Director ("FCPD") in order for the request to be considered. (Id. at 55.) Within five (5) working days of receipt of the inmate's request form, the FCPD or designee must sign and date the form and return a copy to the inmate. (Id.) And, within fifteen (15) working days of receipt of a religious accommodation request form, the FCPD or a Facility Chaplain designated by the FCPD, shall formally interview the inmate to clarify the inmate's request and to assess if the inmate possesses a sincerely held religious belief, considering the various factors set forth in DC-ADM 819. (Id. at 56.)

Following that interview, the FCPD shall fill out a religious accommodation evaluation form, summarizing the specific requests that the inmate has made and providing a rationale for recommending approval or denial of those requests. (Id. at 57.) The FCPD shall then circulate the religious accommodation evaluation form, the religious accommodation request form, and any other attachments, to the following corrections officials: the Corrections Classification Program Manager; the Corrections Food Services Manager (as applicable); the Major of the Guard; the Deputy Superintendent for Centralized Services; the Deputy Superintendent for Facilities Management; and the Facility Manager. (Id.)

13

In addition, within twenty (20) working days of the FCPD's interview of the inmate, the FCPD shall forward "the fully processed" religious accommodation evaluation form, and any attachments, to the Bureau of Treatment Services for review by the Religious Accommodation Review Committee ("RARC").  (Id. at 57-58.)  The RARC shall review the inmate's accommodation packet and prepare a formal recommendation, which shall then be submitted to the Regional Deputy Secretary.  (Id. at 58.)  The Regional Deputy Secretary shall, within fifteen (15) working days, notify the institution of the final decision on the inmate's accommodation request. (Id.)

Here, the undisputed record reflects that inmates housed at SCI Benner are subject to the provisions of DC-ADM 819.  (Doc. No. 90 ¶ 13.)  The record further reflects that, while Plaintiff was housed at SCI Benner, he pursued his administrative remedies under DC-ADM 819.  More specifically, on September 24, 2019, Plaintiff submitted a religious accommodation request form, which specifically sought permission to "form [his] sacred personal bundle."  (Id. ¶ 18.)  The FCPD at SCI Benner, Defendant McCoy, signed, dated, and returned that religious accommodation request form to Plaintiff on September 26, 2019.  (Id. ¶ 20.)  Then, on October 3, 2019, Defendant McCoy interviewed Plaintiff and prepared a written evaluation following the interview, wherein he recommended denying Plaintiff's requested accommodation based upon the following comments:

14

> "[Plaintiff] provided a pamphlet that explained what a sacred bundle is and what might go in it. When I interviewed him, I pointed out that personal bundles might be in the form of medicine bags that hang around the neck. He was adamant that it was more than the medicine bag already approved. The bundle is for larger items that would also need to be approved, such as a flute, drum, tobacco, etc."

(Id. ¶ 22.)  In addition, Plaintiff's accommodation request was circulated amongst the appropriate persons on October 4 and 7, 2019, and each of those persons agreed with the FCPD that Plaintiff's request should be denied.  (Id. ¶ 24.)

Thereafter, on January 22, 2020, the Regional Deputy Secretary issued the final decision, denying Plaintiff's requested accommodation for "a personal sacred bundle" based upon security reasons, and noting that "[t]he least restrictive alternative is to purchase a medicine bag from the Religious Articles Catalog."  (Id. ¶ 26.)  The Religious Articles Catalog is a part of DC-ADM 819 and allows for practitioners of various religions to utilize sacred objects to identify with and to assist them in the practice of their faith.  (Id. ¶ 27.)  Inmates may purchase from that catalog specific sacred objects which are set forth therein; however, for security reasons, the specific items available for purchase are subject to various requirements. (Id. ¶ 28.)

In connection with this undisputed record, Defendants argue, and the Court agrees, that the only religious accommodation claim that Banks has exhausted under DC-ADM 819 is his request to possess a personal "sacred bundle[.]"  (Doc. No. 99

at 10; Doc. No. 90-5 at 1 (seeking, only, permission to "form [his] sacred personal bundle").)   However, the Court's analysis does not end there.   Defendants also appear to argue that, even if Plaintiff has exhausted this particular religious accommodation claim under DC-ADM 819, Plaintiff was still required to exhaust his claim under DC-ADM 804.   (Doc. No. 99 at 7 (stating that Plaintiff needed to exhaust his administrative remedies under both DC-ADM 819 and DC-ADM 804).)

As reflected by the Court's docket, Plaintiff has not filed a brief in opposition or a responsive statement of material facts to Defendants' motion for summary judgment and, thus, Plaintiff has not disputed Defendants' argument that he failed to exhaust his available administrative remedies or that he was required to exhaust those remedies under the administrative processes set forth in DC-ADM 819 and DC-ADM 804.   Moreover, the record, as discussed more fully below, reflects that Plaintiff pursued his administrative remedies under both of these processes. Accordingly, the Court will turn to a discussion of DC-ADM 804 and, specifically, whether Defendants have met their burden to demonstrate Plaintiff's failure to exhaust his available administrative remedies under this administrative process.[5]

---

[5]  Notably, at least one district court in Pennsylvania has concluded, after a thorough discussion, that a DOC inmate who is asserting First Amendment and RLUIPA claims must exhaust his available administrative remedies under both DC-ADM 819 and DC-ADM 804.  See Enoch v. Perry, No. 19-cv-00026, 2021 WL 6128260, at *9 (W.D. Pa. Dec. 27, 2021) (concluding that, "because the PLRA prohibits a prisoner from commencing a lawsuit concerning 'prison conditions . . . until such

## 2.    DC-ADM 804

Under DC-ADM 804,[6] it is the express policy of the DOC for every inmate in its custody to have access to a formal procedure through which the inmates can "seek resolution of problems or other issues of concern arising during the course of [their] confinement."  (Doc. No. 90-12 at 1.)  This formal procedure is referred to by the DOC as the "Inmate Grievance System" (id.), and it is comprised of three (3), separate steps (id. at 4-23).  The first step is that the inmate is required to submit a grievance to the Facility Grievance Coordinator or designee, usually the Superintendent's Assistant, within fifteen (15) working days after the event upon which the grievance is based.  (Id. at 5.)  The second step is that the inmate is required to appeal an initial review response/rejection to the Facility Manager or designee within fifteen (15) working days from the date of the initial review response/rejection.  (Id. at 15.)  The third step is that the inmate is required to appeal the Facility Manager/designee's decision to final review at the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen (15) working days of the

---

administrative remedies as are available are exhausted,'" the plaintiff was required to exhaust his remedies under both DC-ADM 819 and DC-ADM 804 before asserting First Amendment and RLUIPA claims in federal court (quoting 42 U.S.C. § 1997e(a)) (emphasis in original))).

[6] A copy of the DC-ADM 804 policy and procedure manual has been submitted by Defendants in support of their motion for summary judgment.  (Doc. No. 90-12.)

date of the Facility Manager/designee's decision.  (Id. at 18.)  Particularly relevant here, each appeal to SOIGA must contain, inter alia, "a legible copy of the Initial Grievance" and "a legible copy of the Inmate Appeal to the Facility Manager[.]" (Id. at 20.)

Here, the undisputed record reflects that Plaintiff filed grievance no. 849423, on a DC-ADM 804 official inmate grievance form, concerning the denial of his religious accommodation request for a sacred bundle (Doc. No. 90-13) and that he appealed the initial review response/rejection to his grievance (Doc. No. 90-14) on February 18, 2020, to the Facility manager (Doc. No. 90-15).  The undisputed record further reflects that, after the Facility Manager denied Plaintiff's appeal (Doc. No. 90-16), Plaintiff filed a one-page document with SOIGA in an attempt to appeal the Facility Manager's denial of his grievance (Doc. No. 90-17).  SOIGA, however, dismissed Plaintiff's appeal because of Plaintiff's "failure to comply with the provisions of the DC-ADM 804[,]" and specifically, that Plaintiff "failed to provide a legible copy of [his] initial grievance and a copy of [his] appeal to the Facility Manager."  (Doc. No. 90-18 (emphasis in original omitted).)

Because Plaintiff has not produced any evidence, or otherwise created a genuine dispute of material fact, that he submitted a legible copy of his initial grievance or a copy of his appeal to the Facility Manager when he appealed to SOIGA for final review, the Court finds that Plaintiff did not satisfy the

administrative requirements of DC-ADM 804 before asserting his First Amendment and RLUIPA claims against Defendants in this Court.    As a result, Plaintiff has procedurally defaulted these claims against Defendants.    See Spruill, 372 F.3d at 230.

Judicial review, therefore, is barred unless Plaintiff can show that the administrative remedies at SCI Benner were unavailable to him.  See Rinaldi, 904 F.3d at 266 (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting Woodford, 548 U.S. at 93)).  As explained above, "[a]n administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" See Downey, 968 F.3d at 305 (quoting Shifflett, 934 F.3d at 365).

As also explained above, however, Plaintiff has not disputed Defendants' argument concerning his failure to exhaust, much less alleged or shown that the administrative remedies at SCI Benner were unavailable to him.  As such, the Court is constrained to find that Defendants are entitled to summary judgment on the basis of Plaintiff's failure to exhaust available administrative remedies.    In light of this

19

finding, the Court need not reach Defendants' remaining argument that Plaintiff's First Amendment and RLUIPA claims fail on the merits.

### B.    Plaintiff's Motions

In addition, Plaintiff has filed several of his own motions and, specifically, a motion for summary judgment (Doc. No. 81), a motion to appoint counsel (Doc. No. 93), a motion for default judgment (Doc. No. 100), and a motion for contempt (Doc. No. 103).   However, because Defendants have met their burden to demonstrate Plaintiff's failure to exhaust available administrative remedies at SCI Benner, the Court will deny, as moot, Plaintiff's motion for summary judgment, which seeks judgment as a matter of law on the merits of his claims.   The Court will also deny, as moot, Defendants' motion to strike Plaintiff's motion for summary judgment and Plaintiff's motion to appoint counsel.

Finally, the Court turns to Plaintiff's motions for default judgment and for contempt.   (Doc. Nos. 100, 103.)   With regard to these two (2) motions, Plaintiff appears to be challenging Defendants' alleged failure to file a response to his motion for summary judgment.   <u>See</u> (Doc. Nos. 96, 100, 101, 103).   As reflected by the docket, however, Defendants filed a motion to strike and a brief in support thereof in response to Plaintiff's motion for summary judgment.   (Doc. Nos. 84, 85.)   Thus, the Court finds that Plaintiff's argument is without merit.

Even if Plaintiff's motions could be construed as challenging Defendants' failure to timely file a brief in support of their own motion for summary judgment, the Court would still deny Plaintiff's motions. The Federal Rules of Civil Procedure require such decisions to be made on the merits and not on technicalities. <u>See generally</u> <u>Foman v. Davis</u>, 371 U.S. 178, 181 (1962) (explaining that "[i]t is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities"); Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). As such, Plaintiff's motions for default judgment and for contempt will be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment and will deny, as moot, Plaintiff's motion for summary judgment. The Court will also deny, as moot, Defendants' motion to strike Plaintiff's motion for summary judgment and Plaintiff's motion to appoint counsel. Finally, the Court will deny Plaintiff's motions for default judgment and for contempt. An appropriate Order follows.

Dated: January 9, 2023                         <u>s/ Sylvia H. Rambo</u>
                                                SYLVIA H. RAMBO
                                                United States District Judge

21